Duane Morris LLP
*A Delaware Limited Liability Partnership*
1540 Broadway
New York, NY 10036-4086
Telephone: 212.692.1000
Fax: 212.208.4521
Rudolph J. Di Massa, Jr., Esq.
William C. Heuer, Esq.
	*-and-*
Stern Tannenbaum & Bell LLP
380 Lexington Avenue
New York, NY 10168
Telephone: 212.792.8484
Fax: 212.792.8489
Francine C. Nisim, Esq.
*Counsel for Empire State Building Company L.L.C. and Empire State Building, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| **NEW YORK SKYLINE, INC.,** | : Case No. |
| | : 09-10181 (SMB) |
| **Debtor.** | : |

---------------------------------------------------------------x

| | |
|---|---|
| | : Adversary Proceeding |
| **NEW YORK SKYLINE, INC.,** | : |
| Plaintiff, | : Case No. 09-01145(SMB) |
| | : |
| -against- | : |
| | : |
| **EMPIRE STATE BUILDING COMPANY L.L.C.,** | : |
| **Defendant.** | : |

---------------------------------------------------------------x

**PLAINTIFFS' OPPOSITION TO**
**DEBTOR'S MOTION FOR REMAND**

Empire State Building Company L.L.C. ("ESB Co."), by and through its undersigned counsel, hereby opposes (the "Response") the motion (the "Motion") filed by New York Skyline, Inc., the debtor-plaintiff ("Debtor") in this adversary proceeding, seeking entry of an order,

DM3\973302.1

pursuant to 28 U.S.C. §§ 157 and 1452(b), and Rules 5011, 9014 and 9027 of the Federal Rules of Bankruptcy Procedure, remanding this action (the "State Court Action") to the Supreme Court of the State of New York, New York County (the "State Court"). In support of this Response, ESB respectfully represents as follows:

## PRELIMINARY STATEMENT

1. The Debtor commenced its voluntary case under chapter 11 of title 11, United State Code §§ 101 *et. seq.* (the "Bankruptcy Code") on January 12, 2009. It did so not in response to any precipitous action of ESB. *See* Rule 1007 Affidavit, a copy of which is annexed hereto as Exhibit A. In fact, several months before the Debtor filed its voluntary petition, it was the Debtor that sued ESB, not vice versa. That lawsuit, which has been dormant since its inception and in which ESB has never even had to file an answer, has now been removed to the District Court and transferred to this Court as this adversary proceeding, and is the subject of the Debtor's Motion for remand.

2. The Debtor operates a single location tourist attraction (the "Attraction") as its only business. The Debtor has a single lease for nonresidential real property, for the location from which it operates its entire business (the "Lease").[1] ESB Co. is the landlord for the Lease.

3. The Debtor has conceded that without the Lease, the Debtor's business cannot survive.[2] Nonetheless, the Debtor's statutory period under Bankruptcy Code section

---

[1] The Lease was amended and modified a number of times, as is more fully described in ESB's Response to the Debtor's motion for abstention, filed in adversary proceeding number 09-01107 on April 24, 2009. That motion for abstention is scheduled for a hearing at the same time as this Motion. A detailed discussion of the factual background, and the Lease, is contained in ESB's Response to the Debtor's motion seeking abstention. Accordingly, the discussion in this Response is abbreviated to avoid duplication. ESB incorporates herein the discussion and argument contained in its Response to the Debtor's motion for abstention. The Debtor is also party to a license agreement (the "License Agreement") which allows it to sell tickets to the Empire State Building Observatory, which is operated by ESB, and which also allows ESB to sell tickets for the Debtor's Attraction.

[2] *See* Debtor's Motion for an Extension of Time within which to assume the Lease. Docket No. 24 in case no. 09-10181 (the "Motion to Extend Time").

- 2 -

DM3\973302.1

365(d)(4)(A)(i) is about to expire and the Debtor has made no effort to resolve its Lease disputes with ESB. Even if the Court allows the Debtor the maximum period within which it can consider whether to assume the Lease, the Debtor must make that determination, and obtain entry of an order approving any assumption, in the very near future. In order to assume the Lease, the Debtor will have to cure all defaults as required under Bankruptcy Code section 365(b)(1)(A). In order to do so, the Debtor will need to know (i) what the Lease is, (ii) what its defaults are, and (iii) what it must pay to ESB to cure its defaults.

4. The removed State Court Action raises the very issues that the Court necessarily will have to decide in order to approve an assumption of the Lease.[3] In the first cause of action, the Debtor seeks a declaration that it is not and has not been in default of its obligations under the Lease.[4] The second cause of action seeks an injunction preventing ESB from terminating the Lease. The fourth cause of action seeks the rescission of certain of the Debtor's payment obligations under the Lease.[5] The Debtor seeks remand so that it can pursue these claims in the State Court.

5. The Debtor voluntarily invoked this Court's jurisdiction. Creditors, including ESB, have been brought here by the Debtor, not vice versa. The absolute deadline by which the Debtor must determine whether to assume the Lease and have an order entered approving assumption, and cure any defaults, occurs in early August, 2009 (if the Court grants an extension of time). The determinations sought in the removed State Court Action implicate and directly

---

[3] Adversary Proceeding No. 09-01107 raises similar issues (the "ESB Adversary Proceeding"), and was commenced by ESB on March 4, 2009.

[4] Debtor has advised ESB that it will be filing a second amended complaint in the removed State Court Action. Debtor has not yet done so, but has included a draft of its second amended complaint as an exhibit in other matters before the Court. References in this Response are to the allegations made by the Debtor in the exhibit version of the draft second amended complaint.

[5] The remaining causes of action seek declaratory and injunctive relief, and damages.

DM3\973302.1

impact this Court's most basic and important functions. Consequently, ESB urges that those determinations are most appropriately made by this Court. No other court is better equipped to resolve these issues on a timely basis. The Court should deny the Debtor's Motion.[6]

### Argument

**A. The Debtor's Motion For Remand Should Be Denied**

6. Courts generally consider 7 factors in considering whether remand is appropriate under 28 U.S.C. § 1452(b). These factors include:

> (1) the effect on the efficient administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty or unsettled nature of the applicable state law; (4) comity; (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (6) the existence of the right to a jury trial; and (7) prejudice to the involuntarily removed defendants.

*Drexel Burnham Lambert Inc. v. Vigilant Ins. Co. (In re The Drexel Burnham Lambert Group, Inc.)*, 130 B.R. 405, 407 (S.D.N.Y. 1991). Application of these factors to the facts of this case demonstrates that the Debtor's Motion for remand should be denied.

**(a) The Effect On The Efficient Administration Of The Bankruptcy Estate**

7. Resolution of the issues raised in the State Court Action are critical in the Debtor's bankruptcy case, and must be resolved on an expedited basis if the Debtor is to have any chance of reorganizing.

8. If the Debtor wants to assume the Lease, an order must be entered approving assumption no later than early August 2009 (and only if the Court grants an extension of time). In its recently filed motion seeking to extend the time within which it can assume or reject the

---

[6] Rather than remand the State Court Action, ESB respectfully requests that the Court consolidate (procedurally) this adversary proceeding and the ESB Adversary Proceeding, and hold the removed State Court Action in abeyance while the ESB Adversary Proceeding proceeds on an expedited basis.

- 4 -

Lease, the Debtor stated: "the Lease is essential to the Debtor's business and any Chapter 11 Plan because the Debtor's only location is at the Empire State Building . . . ." *See* Motion to Extend Time at ¶ 8. The Debtor also stated: "There is no dispute that a lease exists . . . but there are disputes *as to which of the agreements are enforceable* as part of the Lease and which are not [and] an extension of time [to determine whether to assume or reject the Lease] is warranted *to enable the Debtor to be in a better position to know its rights and obligations under the Lease before committing to assume or reject."* *See id.* (emphasis supplied).

9. Viewed in context – a rapidly approaching deadline for assumption or rejection, which determination is critical to whether the Debtor can reorganize or must liquidate – it is evident that remanding the removed State Court Action will negatively impact the administration of the Debtor's chapter 11 case.[7] There will be delay, and this Court will lose a necessary degree of control over issues critical to the estate. Not only will this Court lose control over the litigation process, it will lose the opportunity to develop its own views during the course of litigation if the removed State Court Action is remanded to State Court. Bearing in mind that *this Court* must determine whether the Lease can ultimately be assumed, keeping all matters before this Court makes good sense, and doing so will likely make any disposition of the Lease and the resolution of all related claims (including ESB's filed proofs of claim) a much more orderly process (regardless of whether assumption is ultimately permitted).

10. These facts demonstrate that remand of the State Court Action will have a significant and negative impact upon the administration of the Debtor's estate, and weigh against granting the relief sought in the Motion.

---

[7] As is demonstrated in detail in ESB's Response to the Debtor's Motion for abstention in Adversary Proceeding No. 09-01107, the matters at issue in that Adversary Proceeding are "core" matters; in many respects, despite the state law nature of the claims asserted in the State Court Action, the same analysis applies here. *See PSINet, Inc. v. Cisco Sys. Cap. Corp. (In re PSINet, Inc.)*, 271 B.R. 1, 22-3 (Bankr. S.D.N.Y. 2001).

(b) **The Extent To Which Issues Of State Law Predominate**

11. State law governs all but one of the causes of action alleged by the Debtor in the removed State Court Action. The Debtor's fifth cause of action incorporates claims under the Americans with Disabilities Act, 28 C.F.R. Part 36. *See* Second Amended Complaint at ¶¶ 138-45 (the "ADA Claim").[8] Accordingly, state law issues predominate the State Court Action.

12. Although state law issues predominate, the fact that these state law issues and claims implicate core bankruptcy functions should be considered, especially in light of the procedural context of the Debtor's chapter 11 case.[9] Viewed in this manner, this factor does not weigh in favor of remand.

(c) **The Difficulty Or Unsettled Nature Of Applicable State Law**

13. The state law issues involved in the State Court Action are straightforward and uncomplicated. ESB contends that the Lease is one contract consisting of the original lease document and a number of amendments, including the May 2005 Agreement, consistent with the manner in which the parties have performed since May 2005. The Debtor, on the other hand, contends that although the Lease and the majority of the May 2005 Agreement is admittedly enforceable, two of its payment obligations under the May 2005 Agreement are somehow void, voidable or subject to a claim for rescission. *See* Second Amended Complaint at ¶¶ 124-36. The remainder of the claims asserted in the removed State Court Action (with the exception of the ADA Claim) involve straightforward matters of contract interpretation.

---

[8] The Debtor's proposed Second Amended Complaint is annexed to the Declaration of Charles Stewart, filed in the ESB Adversary Proceeding in support of the Debtor's motion for abstention.

[9] *See* ESB's Response and Memorandum of Law to the Debtor's motion for abstention, filed on April 24, 2009, in adversary proceeding number 09-01107.

14. Because there is no novel or unsettled matter of state law raised in the removed State Court Action, no special expertise or specialized knowledge which the State Court might possess is necessary to resolution of the Lease disputes. As a result, this factor weighs against remand.

    **(d)**    <u>**Comity**</u>

15. Bearing in mind the uncomplicated and non-controversial nature of the state law claims asserted in State Court Action, comity does not weigh in favor of remand.

    **(e)**    <u>**The Degree Of Relatedness Or Remoteness Of The Litigation To The Main Bankruptcy Case**</u>

16. The causes of action asserted in the State Court Action are very closely related to the Debtor's chapter 11 case, and resolution of the matters raised in the State Court Action is likely to determine whether the Debtor can reorganize or whether the Debtor will be forced to liquidate. The Debtor has conceded this point. This factor weighs against remand.

    **(f)**    <u>**The Existence Of A Right To A Jury Trial**</u>

17. The Lease, by its plain terms, contains a jury trial waiver. At Article 25, the Lease provides:

> Lessor and Lessee hereby waive trial by jury in any action, proceeding or counterclaim involving any matter whatsoever arising out of or in any way connected with this lease, the relationship of landlord and tenant, Lessee's use or occupancy of the premises (except for personal injury or property damage) or involving the right to any statutory relief or remedy.

*See* Lease at Article 25.[10] Accordingly, this factor does not weigh in favor of remand.

---

[10] The Lease is annexed to the Complaint in the ESB Adversary Proceeding as Exhibit A.

### (g) Prejudice To The Involuntarily Removed Defendant

18. The "involuntarily removed defendant" in this case is the Debtor. The Debtor voluntarily commenced its chapter 11 case, and chose to make its rights in the Lease subject to the timeframe for assumption or rejection under Bankruptcy Code section 365. The Debtor also voluntarily subjected any decision it may make regarding assumption or rejection to the review and objection of creditors and the United States Trustee, and approval by the Court. At the same time, the Debtor has forced all creditors to come to this Court to assert their claims, or risk having them barred. ESB has filed its claims. Accordingly, the Debtor should not be heard to argue that it will be prejudiced by proceeding in this Court rather than in the State Court.

### (h) Conclusion – Remand Should Not Be Granted

19. The foregoing analysis demonstrates that the factors to be considered in determining whether remanding is appropriate do not weigh in favor of granting the relief sought in the Motion, and the Motion should be denied.

DM3\973302.1

## Conclusion

**WHEREFORE** ESB Co. respectfully requests that the Court: (i) deny the relief sought in the Motion; (ii) procedurally consolidate the removed State Court Action with the ESB Adversary Proceeding, and require that the Debtor serve and file an answer to the Complaint in the ESB Adversary Proceeding on an expedited basis; and (iii) grant such other and further relief as the Court deems appropriate.

Dated: New York, New York
April 24, 2009

By: /s/William C. Heuer
William C. Heuer
DUANE MORRIS LLP
1540 Broadway
New York, NY 10036-4086
Telephone: 212.692.1000
Fax: 212.208.4521
Rudolph J. Di Massa, Jr., Esq.
William C. Heuer, Esq.
    -and-
Stern Tannenbaum & Bell LLP
380 Lexington Avenue
New York, NY 10168
Telephone: 212.792.8484
Fax: 212.792.8489
Francine C. Nisim, Esq.
*Counsel for Empire State Building Company L.L.C. and Empire State Building, Inc.*

Duane Morris LLP
*A Delaware Limited Liability Partnership*
1540 Broadway
New York, NY 10036-4086
Telephone: 212.692.1000
Fax: 212.208.4521
Rudolph J. Di Massa, Jr., Esq.
William C. Heuer, Esq.
    *-and-*
Stern Tannenbaum & Bell LLP
380 Lexington Avenue
New York, NY 10168
Telephone: 212.792.8484
Fax: 212.792.8489
Francine C. Nisim, Esq.
*Counsel for Empire State Building Company L.L.C. and Empire State Building, Inc.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

| | |
|---|---|
| **In re:** | : Chapter 11 |
| | : |
| **NEW YORK SKYLINE, INC.,** | : Case No. |
| | : 09-10181 (SMB) |
|                             **Debtor.** | : |

---------------------------------------------------------------x

| | |
|---|---|
| | : Adversary Proceeding |
| **NEW YORK SKYLINE, INC.,** | : |
|                           **Plaintiff,** | : Case No. 09-01145(SMB) |
| | : |
|           -against- | : |
| | : |
| **EMPIRE STATE BUILDING COMPANY L.L.C.,** | : |
|                           **Defendant.** | : |

---------------------------------------------------------------x

## CERTIFICATE OF SERVICE

      I, Onika D. McLean, certify that I am not less than 18 years of age, and that on the date set forth below, I caused a true and correct copy of the foregoing Opposition To Debtor's Motion For Remand to be served upon the parties set forth below by overnight delivery or by hand, as noted.

DM3\973302.1

Under penalty of perjury, I declare that the foregoing is true and correct.

Dated: New York, New York  
April 24, 2009

DUANE MORRIS LLP

By: /s/Onika D. McLean

1540 Broadway  
New York, NY 10036-4086  
Telephone: 212.692.1000  
Fax: 212.208.4521  
Rudolph J. Di Massa, Jr., Esq.  
William C. Heuer, Esq.  
    -and-  
Stern Tannenbaum & Bell LLP  
380 Lexington Avenue  
New York, NY 10168  
Telephone: 212.792.8484  
Fax: 212.792.8489  
Francine C. Nisim, Esq.  
*Counsel for Empire State Building Company L.L.C. and Empire State Building, Inc.*

**TO:**

Mark Frankel, Esq. – <u>BY HAND</u>  
Backenroth Frankel & Krinsky, LLP  
489 Fifth Avenue, 28th Floor  
New York, New York 10017  
212.593.1100

Charles A. Stewart, III, Esq. – <u>BY HAND</u>  
Stewart Occhipinti, LLP  
65 West 36th Street, 7th Floor  
New York, New York 10118  
212.239.5500

Serene Nakano, Esq. – <u>BY HAND</u>  
Office of the United States Trustee  
33 Whitehall Street  
New York, New York 10004

Joesph L. Fox, Esq. – <u>BY HAND</u>  
60 East 42nd Street, Suite 2231  
New York, New York 10165

# Exhibit A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re

NEW YORK SKYLINE, INC.

               Debtor.
------------------------------------------------------------x
STATE OF NEW YORK   )
                            ) s.s.:
COUNTY OF NEW YORK  )

Chapter 11

Case no. 09-10181

<u>Local Rule Affidavit</u>

Samuel Ehrenfeld, being duly affirmed, deposes and says:

1. I am the CEO of New York Skyline, Inc., a New York corporation ("Debtor").

2. No committee of creditors was previously appointed hereto.

3. There is no prior pending bankruptcy case.

4. The Debtor maintains its place of business at 350 Fifth Avenue, New York, New York.

5. The schedule of twenty (20) largest creditors excluding insiders is annexed to the petition.

1

6. No property of the Debtor is in possession or custody of any public officer, receiver, trustee, assignee for the benefit of creditors, mortgagee, pledgee or assignee of rents.

7. No shares of stock, debentures or other securities of the Debtor or any subsidiary of the Debtor are publicly held.

8. The Debtor has run the New York Skyride, a successful tourist attraction in the Empire State Building, since 1993. The Debtor took on a great deal of debt in the 1990's to fund construction and working capital from its lender, currently Skyride Associates LLC (the "Lender"). Historically, the Lender has been pleased with the results of operations, and has issued annual forbearance letters, allowing the Debtor to defer principal and some interest payments in exchange for paying negotiated amounts of operating profits on account of accrued interest.

9. As of January 1, 2009, however, due to certain actions of the landlord, Empire State Building Company ("ESB"), and the failure of negotiations between the Debtor and ESB, the Lender has refused to issue the 2009 forbearance letter and has demanded all sums due, in the amount of approximately $24,000,000.

10. In these circumstances, the Lender understands that the Debtor has no choice but to file this Chapter 11, and, believing that the issues with ESB can be resolved more quickly in Bankruptcy Court, has preliminarily agreed to cooperate with the Debtor during the Chapter 11 case.

11. As to the background of the Debtor's dispute with ESB, over the past several years, ESB's management and business plan appears to have changed, resulting in attitudes and actions that have been materially detrimental to the Debtor. Even though the Debtor is probably the largest-paying commercial/retail tenant of ESB, ESB has repeatedly acted to limit and frustrate the Debtor's business and profitability. Specifically, ESB has tried, among other things, to disallow the Debtor's customers, following the Skyride experience, to merge into the line to the ESB Observatory very close to the Observatory elevators, to interfere with the Debtor's active marketing force on the sidewalks outside of the Empire State Building, and to restrict the Debtor's concession stand sales. This has led the Debtor to conclude that ESB seeks to terminate the Debtor's operations.

12. The foregoing became painfully obvious about three years ago when ESB suddenly shut off the escalator to the Debtor's entrance (at the second floor) and forced all customers to go up the escalator on the other side of the building and wait in the line for the Observatory (which could be one to two hours) before considering Skyride. The Debtor's business essentially stopped as a result thereof, before the Supreme Court enjoined such conduct. In an effort to quickly resolve that situation so that it would not do permanent damage to the Debtor's business, the Debtor agreed to a settlement agreement that involved (i) an elaborate security checkpoint at the top of the Debtor's escalator (at the Debtor's cost), and (ii) a "toll" charge for the Debtor's customers who, having completed the Skyride, joined the line to the Observatory. In addition, the Debtor agreed to pay an additional $750,000 annually and ESB agreed

to help the Debtor market Skyride to offset such additional costs, by, among other things, placing large plasma screens in the Observatory waiting/ ticketing area, advertising and promoting Skyride.

13. ESB did not perform its obligations under the Settlement Agreement, and has further proceeded to frustrate the Debtor's business, at great financial detriment to the Debtor, which, in turn, has, among other things, eroded the Lender's confidence in the Debtor's viability.

14. Several months ago, ESB served a three-day default notice of lease termination on the Debtor for alleged non-monetary defaults, which resulted in the Debtor obtaining a Yellowstone injunction, and sanctions against ESB.[1] ESB's conduct in this regard signaled the beginning another assault on the Debtor's business. Indeed, ESB now argues, among other things, that the Debtor is not entitled to a maintain a gift shop, or, alternatively, that the Debtor must limit what it sells, and that the Debtor is not entitled to cross-market other NYC tourist attractions.

15. At the Supreme Court's urging, the Debtor and ESB met over a half dozen times recently in an attempt to reach some operating arrangement that addresses the needs and concerns of both parties. Ideas were discussed that could have formed the basis for a successful resolution, however, ESB suddenly refused to engage in further discussions unless the Debtor paid approximately $400,000 on account of never-before billed disputed escalations in security charges under the Settlement Agreement.

---

[1] New York Skyline, Inc. v Empire State Building Company, LLC, Supreme Court, New York County, Index no. 602409/08.

4

16. The Debtor objects to those charges as they apparently arise from ESB's unilateral (and unjustifiable) hiring of non-union, highly paid security guards in replacement of the union guards for which the Debtor had negotiated under the Settlement Agreement.

17. Thus, as stated above, the Lender has concluded that a forbearance agreement is not in its best interests at this time, and it is the Debtor's intention to seek an early resolution of its disputes with ESB, so as to facilitate a settlement with the Lender.

18. There are no actions presently pending against the Debtor, except the pending Supreme Court proceeding between the Debtor and ESB described herein.

19. The Debtor does not expect to assume any undisputed obligations which will remain unpaid during the next thirty (30) day period.

20. The estimated cash receipts for the next thirty days is $360,000, and the estimated disbursements for the same period is $340,000.

21.     The payroll, excluding officers, for the next thirty days is $61,700. The payroll to the officers of the Debtor for the next thirty days is $19,300.

Dated: New York, New York
       January 12, 2009

                                        By:   Samuel Ehrenfeld, President